**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-----------------------------------------------------------X

ALEXANDER ANGELES and ANTHONY
FORGIONE, *on behalf of themselves and all
others similarly situated,*

                       Plaintiffs,

      -against-

MR. SOS LLC, ALEX KOGAN, and BRIAN
ZILBER,

                    Defendants.

-----------------------------------------------------------X

Case No:

**CLASS AND COLLECTIVE
ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiffs Alexander Angeles ("Angeles") and Anthony Forgione ("Forgione") (collectively, "Plaintiffs") allege on behalf of themselves and all others similarly situated, against Mr. SOS LLC ("Mr. SOS"), Alex Kogan ("Kogan"), and Brian Zilber ("Zilber") (collectively, "Defendants"), upon information and belief, as follows:

## NATURE OF THE CLAIMS

1.     Mr. SOS operates under the name of 'Mr. SOS Installs' as a provider of commercial and residential appliance installation, electrician, handyman, painting, and plumbing services to the public.[1]

2.     As part of their business operations, Mr. SOS partners with retailers such as Amazon, The Home Depot, Lowe's, and Sears to provide third-party installation services in New Jersey, New York, Connecticut, and Pennsylvania.[2]

3.     'Mr. SOS Installs' has operated since 1999.[3]

---

[1] http://mrsosinstalls.com, retrieved on November 10, 2022.
[2] Id.
[3] http://mrsosinstalls.com/about/, retrieved on November 10, 2022.

4.     From on or around December 1, 2020, until on or around January 31, 2022, Angeles was employed by Mr. SOS as an Installer.

5.     From on or around January 2, 2021, until on or around February 10, 2022, Forgione was employed by Mr. SOS as an Installer.

6.     For the duration of Plaintiffs' employment with Mr. SOS, Mr. SOS was owned by Kogan, who managed the day-to-day operations of Mr. SOS.

7.     For the duration of Plaintiffs' employment with Mr. SOS, Plaintiffs directly reported to Zilber, a Manager with Mr. SOS.

8.     Plaintiffs, for the duration of their employment, were reliable, hard-working, and diligent employees.

9.     Defendants systematically misclassified Plaintiffs and other non-exempt employees, including drivers, installers, and helpers, as independent contractors, paying them a flat, daily wage regardless of how many hours they worked.

10.     Defendants maintained a pattern and practice of failing to pay Plaintiffs and other non-exempt employees, including drivers, installers, and helpers, the minimum wage rate for all hours worked, the overtime rate of one-and-one half (1 ½) times the regular hourly rate/applicable minimum wage rate for all hours worked in excess of forty per week, and spread-of-hours pay for each workday their shift or shifts exceeded 10 hours per day.

11.     Defendants regularly paid Plaintiffs and other non-exempt employees a flat per-day wage, even though they routinely worked over 40 hours per week.  Occasionally, Defendants failed to pay Plaintiffs and other non-exempt employees entirely for days they worked.  This payroll scheme is an obvious and willful avoidance of Defendants' obligations to pay minimum wage and

overtime, as required under New Jersey and New York state law and federal law, and spread-of-hours pay under New York State law.

12.     Additionally, Defendants maintained a pattern and practice of taking unlawful deductions from the pay of Plaintiffs and similarly situated employees for certain expenses incurred in the regular course of their employment with Defendants, including, but not limited to alleged parking citations, insurance deductibles for accidental damage to company vehicles, and the cost of repair or replacement for damaged property.

13.     Defendants further maintained a pattern and practice of failing to promptly pay Plaintiffs and similarly situated employees for the work they performed, including by failing to pay employees the full amount owed on or before the regular pay date set by Defendants and by failing to pay employees—who are "manual workers"—within seven (7) calendar days of the week during which the wages were earned.

14.     Defendants also failed to furnish Plaintiffs and similarly situated employees with a wage notice at the time of their hire (or at any time thereafter) and complete and accurate wage statements with each payment of wages.  Defendants further failed to maintain an accurate record keeping of hours worked and wages paid to Plaintiffs and similarly situated employees.

15.     Defendants have systematically and repeatedly ignored the requirements of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, *et seq.* ("NJWHL") and New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.* ("NJWPL"), and the New York Labor Law § 190, *et seq.* ("NYLL").  Plaintiffs, on behalf of themselves and similarly situated employees, seek relief from Defendants' unlawful actions, including compensation for unpaid minimum wages, overtime wages, spread-of-hours pay, unlawful deductions, and failure to promptly pay wages, liquidated damages, pre- and post-

judgment interest, statutory damages for wage notice and pay statement violations, and attorneys' fees and costs, pursuant to the FLSA, NJWHL, NJWPL, and NYLL.

16. Plaintiffs further seeks to recover damages against Defendants to redress the injuries they suffered as the result of being retaliated against by Defendants for complaining of and opposing Defendants' unlawful pay practices, in violation of NYLL § 215 and the NJWHL.

## JURISDICTION AND VENUE

17. This Court has original jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' NJWHL, NJWPL, and NYLL claims pursuant to 28 U.S.C. § 1367.

18. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the instant claims occurred in this district.

19. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff Angeles**

20. Angeles was and is a resident of Middlesex County, New Jersey.

21. From on or around December 1, 2020, until on or around January 31, 2022, Angeles was employed by Mr. SOS as an Installer.

22. For the duration of Angeles's employment with Defendants, Kogan was an owner of Mr. SOS.

23. For the duration of Angeles's employment with Defendants, Zilber was Angeles's manager, employed by Mr. SOS.

24.    For the duration of his employment with Defendants, Angeles was an employee engaged in commerce or the production of goods for commerce on behalf of Defendants.

25.    By way of example, during his employment with Defendants, Angeles delivered and installed appliances and other items within the states of New Jersey, New York, Pennsylvania, Connecticut, and Delaware that were manufactured outside the state in which Angeles installed the appliance or item and transported via interstate commerce.

26.    At all times relevant to this action, Angeles was an employee of Defendants within the meaning of the FLSA, NJWHL, NJWPL, and NYLL.

**Plaintiff Forgione**

27.    Forgione was and is a resident of Monmouth County, New Jersey.

28.    From on or around January 2, 2021, until on or around February 10, 2022, Forgione was employed by Mr. SOS as an Installer.

29.    For the duration of Forgione's employment with Defendants, Kogan was an owner of Mr. SOS.

30.    For the duration of Forgione's employment with Defendants, Zilber was Forgione's manager, employed by Mr. SOS.

31.    For the duration of his employment with Defendants, Forgione was an employee engaged in commerce or the production of goods for commerce on behalf of Defendants.

32.    By way of example, during his employment with Defendants, Forgione delivered and installed appliances and other items within the states of New Jersey, New York, Pennsylvania, Connecticut, and Delaware that were manufactured outside the state in which Forgione installed the appliance or item and transported via interstate commerce.

**Defendant Mr. SOS**

33.     For the duration of Plaintiffs' employment with Defendants, Mr. SOS was a foreign limited liability company organized and existing under the laws of New York, with its principal headquarters located at 1125 Banner Avenue, Apt. 7B, Brooklyn, New York 11235.

34.     For the duration of Plaintiffs' employment with Defendants, Mr. SOS was a for-profit entity authorized to conduct business in the states of New York and New Jersey.

35.     For the duration of Plaintiffs' employment with Defendants, Mr. SOS operated a warehouse located at 300 Ridge Road, Piscataway, New Jersey 08854.

36.     For the duration of Plaintiffs' employment with Defendants, Mr. SOS operated a warehouse located at 299 Paulsboro Road, Swedesboro, New Jersey 08085.

37.     For the duration of Plaintiffs' employment with Defendants, Mr. SOS operated a warehouse located at 74 Carter Drive, Edison, New Jersey 08817.

38.     For the duration of Plaintiffs' employment with Defendants, Mr. SOS provided services to customers throughout the states of New Jersey, New York, Pennsylvania, Connecticut, and Delaware.

39.     For the duration of Plaintiffs' employment with Defendants, Mr. SOS was a business or enterprise engaged in interstate commerce within the meaning of the FLSA.

40.     For the duration of Plaintiffs' employment with Defendants, Mr. SOS had employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

41.     For the duration of Plaintiffs' employment with Defendants, Mr. SOS had an annual gross volume of sales made or business done in excess of $500,000.

42. For the duration of Plaintiffs' employment with Defendants, Mr. SOS was an employer of Plaintiffs within the meaning of the FLSA, NJWHL, NJWPL, and NYLL.

**Defendant Alex Kogan**

43. Kogan, upon information and belief, is a resident of the State of New York.

44. At all times relevant to this action, Kogan served as a principal, officer, owner and/or manager of Mr. SOS.

45. For the duration of Angeles's employment with Mr. SOS, Kogan was a manager of Angeles.

46. For the duration of Forgione's employment with Mr. SOS, Kogan was a manager of Forgione.

47. For the duration of Plaintiffs' employment with Defendants, Kogan possesses or possessed an ownership interest in, operational control over, policy making authority at, and/or significant authority over the day-to-day operations of Mr. SOS.

48. At all times relevant to this action, Kogan possessed and exercised the power and authority to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, and determine terms and conditions of employment of Plaintiffs, the FLSA Collective, the Rule 23 NJWHL/NJWPL Class, and the Rule 23 NYLL Class.

49. Employees of Mr. SOS could complain to Kogan directly regarding any of the terms of their employment, and Kogan would have the authority to effect any changes to the quality and terms of their employment.

50.     The acts of Mr. SOS charged in this Complaint were authorized, directed, or accomplished by Kogan individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of Mr. SOS.

51.     Prior to the incorporation of Mr. SOS, since the inception of the business known as 'Mr. SOS Installs', Kogan possessed and exercised the same authority over the operations of the business known as 'Mr. SOS Installs' and its employees as he did upon and after the incorporation of Mr. SOS.

52.     Kogan is personally and jointly and severally liable for the violations of the FLSA, NJWHL, NJWPL, and NYLL by Mr. SOS.

**Defendant Brian Zilber**

53.     Zilber, upon information and belief, is a resident of the State of New York.

54.     At all times relevant to this action, Zilber served as an officer and/or manager of Mr. SOS.

55.     For the duration of Angeles's employment with Mr. SOS, Zilber was a manager of Angeles.

56.     For the duration of Forgione's employment with Mr. SOS, Zilber was a manager of Forgione.

57.     For the duration of Plaintiffs' employment with Defendants, Zilber possesses or possessed operational control over, policy making authority at, and/or significant authority over the day-to-day operations of Mr. SOS.

58.     At all times relevant to this action, Zilber possessed and exercised the power and authority to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, and

determine terms and conditions of employment of Plaintiffs, the FLSA Collective, the Rule 23 NJWHL/NJWPL Class, and the Rule 23 NYLL Class.

59.     Employees of Mr. SOS could complain to Zilber directly regarding any of the terms of their employment, and Zilber would have the authority to effect any changes to the quality and terms of their employment.

60.     The acts of Mr. SOS charged in this Complaint were authorized, directed, or accomplished by Zilber individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of Mr. SOS.

61.     Prior to the incorporation of Mr. SOS, since the inception of the business known as 'Mr. SOS Installs', Zilber possessed and exercised the same authority over the operations of the business known as 'Mr. SOS Installs' and its employees as he did upon and after the incorporation of Mr. SOS.

62.     Zilber is personally and jointly and severally liable for the violations of the FLSA, NJWHL, NJWPL, and NYLL by Mr. SOS.

## JURISDICTION AND VENUE

63.     This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to the provisions of 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. 216(b).  This Court has supplemental jurisdiction over Plaintiff's claims under state law pursuant to 28 U.S.C. § 1367(a), in that the state and federal claims arise from a common nucleus of operative fact such that they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

64.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2), because the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

65.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FLSA COLLECTIVE ALLEGATIONS

66.     Plaintiff brings claims for relief as a collective action pursuant to the FLSA, 29 U.S.C § 216(b), on behalf of all current and former non-exempt employees of Mr. SOS and/or the business operating as 'Mr. SOS Installs', including drivers, installers, and helpers, employed by Defendants at any time from three years prior to April 27, 2022, through the entry of judgment in this action (the "FLSA Collective").

67.     Counsel for the parties executed a Tolling Agreement on behalf of the FLSA Collective (as well as the Rule 23 NJWHL/NJWPL Class and Rule 23 NYLL Class) tolling the statute of limitations for all individual, collective, and class claims alleged herein, beginning on April 27, 2022, until the date this Complaint is filed.

68.     The FLSA Collective consists of approximately fifty-five (55) similarly situated current and former non-exempt employees of Mr. SOS and/or the business operating as 'Mr. SOS Installs' prior to its incorporation as Mr. SOS, who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA, *inter alia*, as a result of Defendants denying them minimum wage, overtime pay, and other monies.

69.     As part of their regular business practices, Defendants have intentionally, willfully, repeatedly, and in bad faith harmed Plaintiffs and the FLSA Collective by engaging in a pattern,

practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, the following:

    a. Failing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked;

    b. Failing to pay Plaintiffs and the FLSA Collective the proper overtime pay for all hours worked over forty hours per week;

    c. Failing to pay Plaintiffs and the FLSA Collective promptly and in full when their wages become due and owing; and

    d. Failing to keep complete and accurate records with respect to the hours worked and pay received by Plaintiffs and the FLSA Collective.

70. Defendants have engaged in this unlawful conduct pursuant to a policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA, NJWHL, and NYLL.

71. Defendants' unlawful conduct has been intentional, willful, in bad faith and has caused damage to Plaintiffs and the FLSA Collective.

72. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable by Defendants, and are locatable through Defendants' records, which Defendants are required to maintain pursuant to the FLSA, NJWHL, and NYLL. These similarly situated employees should be notified of and allowed to opt into this action pursuant to 29 U.S.C. § 216(b).

## RULE 23 CLASS ALLEGATIONS – NEW JERSEY

73. Plaintiffs bring claims for relief as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class consisting of all current and former non-exempt employees of Mr. SOS and/or the business operating as 'Mr. SOS Installs', including, but not

limited to drivers, installers, and helpers, employed by Defendants and performing work for Defendants in New Jersey at any time from six years prior to April 27, 2022, through the entry of judgment in this action (the "Rule 23 NJWHL/NJWPL Class").

74.    The persons in the Rule 23 NJWHL/NJWPL Class are so numerous that joinder of all members is impracticable.  The exact number of the Rule 23 Class is unknown to Plaintiffs at this time, but there are believed to be 75 such persons.

75.    The identities of the Rule 23 NJWHL/NJWPL Class members are known to the Defendants and are contained in the employment records that the Defendants are required to create and maintain pursuant to the FLSA and NJWHL.

76.    Commons questions of law and fact exist as to all members of the Rule 23 NJWHL/NJWPL Class that predominate over any questions affecting solely individual members. Among the questions of law and fact common to the Rule 23 NJWHL/NJWPL Class are:

a.    Whether Defendants failed to pay the Rule 23 NJWHL/NJWPL Class minimum wages for each hour worked;

b.    Whether Defendants failed to pay the Rule 23 NJWHL/NJWPL Class overtime compensation at a rate of one-and-one-half times their regular hourly rate/applicable minimum wage rate for all hours worked over 40 in a workweek in violation of the NJWHL;

c.    Whether Defendants unlawfully deducted the pay of the Rule 23 NJWHL/NJWPL Class;

d.    Whether Defendants failed to pay the Rule 23 NJWHL/NJWPL Class the full amount of wages due on the designated regular pay day; and

e.    Whether Defendants failed to keep true and accurate pay records, records for all hours/shifts worked by the Rule 23 NJWHL/NJWPL Class, and other records required by the NJWHL.

77.    The claims of Plaintiffs are typical of the claims of the Rule 23 NJWHL/NJWPL Class they seek to represent.  Plaintiffs and the Rule 23 NJWHL/NJWPL Class work or have

worked for Defendants within the six years prior to the filing of this action plus the time the statute of limitations was tolled. They enjoy the same statutory rights under the NJWHL to be paid the correct minimum wage, to be paid overtime wages for all hours worked in excess of 40 in a workweek, and to have Defendants maintain complete and accurate records of their hours worked and pay received, and under the NJWPL, to be paid their full wages on the designated regular pay day.  Plaintiffs and the Rule 23 NJWHL/NJWPL Class have sustained similar types of damages as a result of Defendants' failure to comply with the NJWHL and NJWPL.

78.     Plaintiffs and the Rule 23 NJWHL/NJWPL Class have all been injured in that they have been under-compensated and untimely compensated due to Defendants' common policies, practices, and patterns of conduct.

79.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 NJWHL/NJWPL Class.

80.     Plaintiffs have retained counsel competent and experienced in wage and hour litigation and class action litigation.

81.     There are no conflicts between Plaintiffs and the Rule 23 NJWHL/NJWPL Class members.

82.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 NJWHL/NJWPL Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices and procedures. Although the relative damages suffered by the individual class members are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against

Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

83.    This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## <u>RULE 23 CLASS ALLEGATIONS – NEW YORK</u>

84.    Plaintiffs bring claims for relief as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class consisting of all current and former non-exempt employees of Mr. SOS and/or the business operating as 'Mr. SOS Installs', including, but not limited to drivers, installers, and helpers, employed by Defendants and performing work for Defendants in New York at any time from six years plus applicable tolling time prior to April 27, 2022, through the entry of judgment in this action (the "Rule 23 NYLL Class").

85.    The persons in the Rule 23 NYLL Class are so numerous that joinder of all members is impracticable. The exact number of the Rule 23 NYLL Class is unknown to Plaintiffs at this time, but there are believed to be 75 such persons.

86.    The identities of the Rule 23 NYLL Class members are known to the Defendants and are contained in the employment records that the Defendants are required to create and maintain pursuant to the FLSA and NYLL.

87.    Commons questions of law and fact exist as to all members of the Rule 23 NYLL Class that predominate over any questions affecting solely individual members. Among the questions of law and fact common to the Rule 23 NYLL Class are:

        a.  Whether Defendants failed to pay the Rule 23 NYLL Class minimum wages for each hour worked;

b. Whether Defendants failed to pay the Rule 23 NYLL Class overtime compensation at a rate of one-and-one-half times their regular hourly rate/applicable minimum wage rate for all hours worked over 40 in a workweek in violation of the NYLL;

c. Whether Defendants failed to pay the Rule 23 NYLL Class spread-of-hours pay for each workday that a shift or shifts exceeded 10 hours per day;

e. Whether Defendants unlawfully deducted the pay of the Rule 23 NYLL Class;

f. Whether Defendants failed to pay the Rule 23 NYLL Class promptly and in full not later than seven (7) calendar days after the end of the week in which their wages were earned;

g. Whether Defendants failed to furnish the Rule 23 NYLL Class with an accurate statement of all wages, hours worked, rates paid, and gross wages as required by the NYLL and supporting regulations;

h. Whether Defendants failed to furnish the Rule 23 NYLL Class with wage notices as required by the NYLL and supporting regulations; and,

i. Whether Defendants failed to keep true and accurate pay records, records for all hours/shifts worked by the Rule 23 NYLL Class, and other records required by the NYLL.

88. The claims of Plaintiffs are typical of the claims of the Rule 23 NYLL Class they seek to represent. Plaintiffs and the Rule 23 NYLL Class work or have worked for Defendants within the six years prior to the filing of this action plus the time the statute of limitations was tolled. They enjoy the same statutory rights under the NYLL to be paid the correct minimum wage, to be paid overtime wages for all hours worked in excess of 40 in a workweek, to be paid spread-of-hours pay for workdays that their shift or shifts exceeded 10 hours per day, to not have Defendants take unlawful deductions from their pay, to be paid promptly and in full within seven (7) days of earning their wages, to be given wage notices at the time of hire and upon change in their rate of pay, to be issued complete and accurate wage statements along with each payment of wages, and to have Defendants maintain complete and accurate records of their hours worked and

pay received. Plaintiffs and the Rule 23 NYLL Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

89.     Plaintiffs and the Rule NYLL 23 Class have all been injured in that they have been under-compensated and untimely compensated due to Defendants' common policies, practices, and patterns of conduct.

90.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 NYLL Class.

91.     Plaintiffs have retained counsel competent and experienced in wage and hour litigation and class action litigation.

92.     There are no conflicts between Plaintiffs and the Rule 23 NYLL Class members.

93.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 NYLL Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices and procedures. Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

94.     This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## **PLAINTIFFS' FACTUAL ALLEGATIONS**

**Plaintiff Angeles**

95.     On or around December 1, 2020, Angeles commenced employment with Defendants as an Installer.

96.     Angeles worked for Defendants from on or around December 1, 2020, until on or around January 31, 2022.

97.     For the duration of his employment with Defendants, both Kogan and Zilber directly controlled the terms and conditions of Angeles's employment and actively managed and supervised Angeles throughout his employment.

98.     As an Installer for Defendants, Angeles's duties and responsibilities included, but were not limited to loading equipment and appliances from the warehouse into the company van, driving the company van, performing home installations of electronic devices and appliances purchased by customers of retail stores with whom Defendants contracted, and other manual labor.

99.     For the duration of his employment with Defendants, Angeles spent nearly all of his workday performing manual labor.

100.    For the duration of his employment with Defendants, Defendants assigned Angeles to perform installations for customers in New Jersey, New York, Pennsylvania, Connecticut, and Delaware.

101.    During his employment with Defendants, Defendants primarily assigned Angeles to customers in New Jersey and New York, with occasional assignments in Pennsylvania, Connecticut, and Delaware.

102.    As a result, during his employment with Defendants, Angeles performed approximately 75% of his work within the state of New Jersey, approximately 20% of his work

within the state of New York, and the remaining work in the states of Pennsylvania, Connecticut, and Delaware.

103.    As an example, for the week of March 21, 2021, Angeles worked more than 40 hours in New Jersey.

104.    As a further example, for the week of December 16, 2020, Angeles worked more than 40 hours in New York.

105.    For the duration of his employment with Defendants, Angeles satisfactorily performed his duties and responsibilities.

106.    For the duration of his employment with Defendants, Defendants provided a company van for Angeles to drive to and from his assignments.

107.    For the duration of his employment with Defendants, Defendants provided Angeles a company E-ZPass, which was owned and paid for by Defendants, for Angeles to use while driving the company van in the course of his employment for Defendants.

108.    Once per week, at Defendants' direction, Angeles took the company van home overnight to drive directly to his first assignment the next day.

109.    Other than the one day per week when Angeles drove the company van directly to his first assignment, every morning he worked for Defendants, Angeles drove to Defendants' warehouse in Piscataway, New Jersey, to pick up the company van, from where he would drive to his daily assignments.

110.    For the duration of his employment with Defendants, Angeles worked Monday through Friday, plus two or three Saturdays each month.

111.    Each day he worked for Defendants, if he did not have the company van overnight, Angeles arrived at the Piscataway warehouse to pick up the company van at approximately 7:30

a.m.  If Angeles had the van overnight, he usually arrived at his first assignment between 7:30 a.m. and 8:00 a.m.

112.    Each day he worked for Defendants, Angeles dropped the van off at the Piscataway warehouse after completing his route (or took the van home), between 6:00 p.m. and 9:00 p.m.

113.    For the duration of his employment with Defendants, Angeles regularly worked between 65 and 75 hours per week.

114.    For the duration of his employment with Defendants, regardless of how many hours he worked per week, Defendants paid Angeles a flat, daily wage of $250.

115.    When Angeles first commenced employment with Defendants, Defendants failed to set a regular payday, paying Angeles's wages haphazardly by electronic transfer through Zelle or in cash.

116.    In or around March 2021, Defendants began paying Angeles on a bi-weekly pay cycle, setting Tuesday as the pay day for the pay period commencing Monday two weeks prior and concluding the Saturday before payday, by electronic transfer through Zelle or in cash.

117.    Despite establishing a regular payday for Angeles, Defendants often missed the Tuesday payroll and paid Angeles late.

118.    Additionally, approximately once per month, Angeles covered a shift for another employee, and Defendants did not pay him at all for the covered day.  Defendants failed to pay Angeles despite Angeles having uploading proof he worked the shift—including pictures of himself in Defendants' uniform.

119.    On several occasions during Angeles's employment with Defendants, Kogan threatened to withhold part of Angeles's pay if he did not complete his route.

120.     On several further occasions, Defendants unlawfully deducted Angeles's pay, for a variety of alleged infractions.

121.     By way of example, on Angeles's first day of work for Defendants, Angeles got into a car accident while driving the company van.  As a result of the accident, Defendants deducted $250—one day of wages—from Angeles's pay, purportedly to pay for part of the cost of the insurance deductible and/or repairs.

122.     By way of further example, Zilber advised Angeles that Defendants were receiving insurance claims from customers for purportedly damaged equipment.  Defendants deducted the amount of the claims from Angeles's pay.

123.     Additionally, despite never receiving any parking tickets while driving the company van, Zilber deducted money from Angeles's pay, which Zilber told Angeles was due to parking ticket fines purportedly incurred by Angeles while he was driving the company van.

124.     Between the purported insurance claims and parking tickets, Defendants deducted over $700 from Angeles's pay.

125.     Initially upon noticing the deductions from his pay, Angeles confronted Zilber and asked for his full pay.  Zilber refused.

126.     When Angeles asked Zilber to provide proof—or even specific information, such as the dates and times and amounts—of the insurance claims and parking tickets, so he could challenge those claims, Zilber refused.

127.     Instead Zilber informed Kogan of Angeles's complaints.

128.     In or around the end of January 2022, Kogan, upon learning from Zilber of Angeles's complaints of the unlawful deductions from his pay, removed Angeles from the group chat where Defendants provided Angeles and the other installers their schedules.

129.     When Angeles asked Zilber why he was removed from the group chat, Zilber told Angeles that Kogan had removed him.

130.     Angeles then reached out to Kogan, who told Angeles he was fired.

131.     Angeles's termination from Defendants was in retaliation for his complaints of Defendants' unlawful deductions from his pay.

132.     During Angeles's employment with Defendants, Defendants classified Angeles (and all other Installers) as independent contractors.

133.     However, Angeles (and Defendants' other Installers) were misclassified by Defendants as independent contractors and should have been classified as employees.

134.     Angeles was economically dependent upon Defendants and was not in business for himself:

    a.  Defendants controlled the terms and conditions of Angeles's employment. For example, Defendants unilaterally determined Angeles's route assignment and work locations, work assignments, work schedule, rate of pay, method of pay and did not allow Angeles to work at his own convenience. Defendants further had the power to hire, fire and discipline Angeles and required Angeles to work according to the specific instructions of Defendants;

    b.  Angeles did not require a high degree of skill and/or independent initiative to perform his work;

    c.  Angeles was a long-term employee who was not free to engage in other employment; and,

    d.  Angeles's work as an Installer was an integral part of Defendants' business.

135.     Throughout Angeles's employment with Defendants, the terms and conditions of his employment were controlled directly by Kogan and Zilber.

136.     By way of example, Angeles was expected to work a full day no less than five days per week—Monday to Friday, according to a schedule and route set by Defendants.

137. Angeles's failure to work at least five days per week according to the schedule and route set by Defendants would have subjected him to discipline by Defendants.

138. Angeles was not permitted to take a day off—including a sick day—without approval from Kogan or Zilber.

139. On one occasion—on or around December 20, 2021—Angeles learned his grandfather suffered a stroke, and Angeles followed Defendants' protocol for requesting a day off, making his request through Defendants' administrative assistant, Amanda Elkholy ("Elkholy").

140. Shortly after Angeles spoke with Elkholy, Elkholy called Angeles back to inform Angeles that Kogan refused Angeles's request for the day off. Elkholy further advised Angeles that if he did not work his route, he would be terminated.

141. Additionally, Zilber was in constant communication with Angeles throughout each workday—at least once per hour—checking in on his status, directing his performance, answering questions, and engaging in other communications related to Angeles's job performance.

142. On occasions when Angeles (or other Installers) were having difficulty performing an installation, Zilber provided training as to how to perform the installation and, on several occasions, Zilber did so by travelling to the job location and guiding Angeles through the installation.

143. If Angeles needed to purchase equipment or materials to complete an installation, Angeles was required to contact Zilber, inform him of the materials needed, and receive approval from Zilber to purchase the materials, for which Defendants would reimburse Angeles.

144. For the duration of his employment with Defendants, Angeles drove the company van and, for a significant period of his employment, he was required to wear a uniform with Defendants' logo and name.

145.     Throughout his employment with Defendants, Defendants never provided Angeles with any meal breaks.

146.     For the duration of his employment with Defendants, Defendants did not track Angeles's hours worked—including the precise time Angeles commenced work and concluded work—using a punch clock, log book, or other method of contemporaneous recording.

147.     For the duration of his employment with Defendants, Defendants failed to pay Angeles the applicable minimum wage rate for all hours worked, in accordance with the FLSA, NJWHL, and NYLL.

148.     For the duration of his employment with Defendants, Defendants misclassified Angeles as an independent contractor.

149.     For the duration of his employment with Defendants, Angeles regularly worked more than 40 hours per week but was not paid overtime pay at one-and-one-half times the applicable rate by Defendants.

150.     For the duration of his employment with Defendants, Angeles regularly worked more than 10 hours in a day but was not paid spread-of-hours pay.

151.     During his employment with Defendants, Defendants took unlawful deductions from Angeles's pay.

152.     During his employment with Defendants, Defendants failed to promptly pay Angeles all wages due.

153.     Defendants failed to keep accurate records of wages earned or hours worked by Angeles.

154.     For the duration of his employment with Defendants, Defendants did not provide Angeles with a wage notice setting forth his rate of pay and basis thereof, exempt status, overtime

rate, method of compensation, regular payday, names of his employers (including fictitious names), addresses and phone numbers for her employers' main offices or principal locations, or any allowances taken.

155.    For the duration of his employment Defendants, Defendants failed to furnish Angeles with an accurate and complete statement with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

156.    Defendants terminated Angeles's employment after and because he complained of Defendants' unlawful pay practices.

157.    Defendants knowingly and willfully violated the FLSA, NJWHL, NJWPL, and NYLL with respect to Angeles's employment.

**Plaintiff Anthony Forgione**

158.    On or around January 2, 2021, Forgione commenced employment with Defendants as an Installer.

159.    Forgione worked for Defendants from on or around December 2, 2021, until on or around February 10, 2022.

160.    For the duration of his employment with Defendants, both Kogan and Zilber directly controlled the terms and conditions of Forgione's employment and actively managed and supervised Forgione throughout his employment.

161.     As an Installer for Defendants, Forgione's duties and responsibilities included, but were not limited to loading equipment and appliances from the warehouse into the company van, driving the company van, performing home installations of electronic devices and appliances purchased by customers of retail stores with whom Defendants contracted, and other manual labor.

162.     For the duration of his employment with Defendants, Forgione spent nearly all of his workday performing manual labor.

163.     For the duration of his employment with Defendants, Defendants assigned Forgione to perform installations for customers in New Jersey, New York, Pennsylvania, Connecticut, and Delaware.

164.     During his employment with Defendants, Defendants primarily assigned Forgione to customers in New Jersey and New York, with occasional assignments in Pennsylvania, Connecticut, and Delaware.

165.     As a result, during his employment with Defendants, Forgione performed approximately 55% of his work within the state of New Jersey, approximately 35% of his work within the state of New York, and the remaining work in the states of Pennsylvania, Connecticut, and Delaware.

166.     As an example, for the week of June 21, 2021, Forgione worked more than 40 hours in New Jersey.

167.     As an example, for the week of March 8, 2021, Forgione worked more than 40 hours in New Jersey.

168.     For the duration of his employment with Defendants, Forgione satisfactorily performed his duties and responsibilities.

169.   For the duration of his employment with Defendants, Defendants provided a company van for Forgione to drive to and from his assignments.

170.   For the duration of his employment with Defendants, Defendants provided Forgione a company E-ZPass, which was owned and paid for by Defendants, for Forgione to use while driving the company van in the course of his employment for Defendants.

171.   For the duration of his employment with Defendants, Forgione worked Monday through Friday, plus approximately one Saturday each month.

172.   Approximately three days per week, at Defendants' direction, Forgione took the company van home overnight to drive directly to his first assignment the next day.

173.   On the workdays when Forgione had the company van at his home, Forgione left his house at approximately 7:00 a.m. and arrived at his first assignment at approximately 7:30 a.m.

174.   On the workdays when Forgione did not have the company van at his home, Forgione left his house at approximately 7:00 a.m. and arrived at the Piscataway warehouse to pick up and load the company van at approximately 7:30 a.m., following which he drove to his first assignment.

175.   For the duration of his employment with Defendants, three days per week, Forgione's workday ended at approximately 7:30 p.m., and the remaining two or three days per week, Forgione's workday ended at approximately 9:00 p.m.

176.   For the duration of his employment with Defendants, Forgione regularly worked between 68 and 80 hours per week.

177.   From the commencement of his employment with Defendants until approximately the end of May 2021, regardless of how many hours he worked, Defendants paid Forgione a flat, daily wage of $225.

178.     From approximately the beginning of June 2021, until the end of his employment with Defendants, regardless of how many hours he worked, Defendants paid Forgione a flat, daily wage of $250.

179.     For the duration of Forgione's employment with Defendants, Defendants paid Forgione's wages by electronic transfer through Zelle.

180.     For the duration of Forgione's employment with Defendants, Defendants set Forgione's pay as bi-weekly, with his regular payday every other Friday for work performed during the period commencing three Saturdays prior to pay day and concluding the Saturday prior to pay day.

181.     In or around March 2021, Defendants began paying Forgione on a bi-weekly pay cycle, setting Tuesday as the pay day for the pay period commencing Monday two weeks prior and concluding the Saturday before payday, usually by electronic transfer through Zelle.

182.     Despite establishing a regular payday for Forgione, Defendants often missed the Friday payroll and paid Forgione late.

183.     Additionally, approximately once per month, Forgione covered a shift for another employee, and Defendants did not pay him at all for the covered day.  Defendants failed to pay Forgione despite Forgione having uploading proof he worked the shift—including pictures of himself in Defendants' uniform.

184.     On several occasions during Forgione's employment with Defendants, Kogan threatened to withhold Forgione's pay or terminate Forgione if he did not complete his route.

185.     On multiple occasions during Forgione's employment with Defendants, Defendants unlawfully deducted Forgione's pay.

186.    By way of example, Defendants unlawfully deducted $305 from Forgione's pay, purportedly for parking tickets Forgione received while operating the company van.

187.    After Forgione protested the deduction and provided proof he was not driving the company van when the parking violations purportedly occurred, Defendants repaid Forgione the deducted $305 when they next paid Forgione his wages.

188.    By way of further example, Defendants unlawfully deducted $179 from Forgione's pay, purportedly for his share of the value of property damage a customer claimed occurred during an install.

189.    On or about October 5, 2021, Defendants provided Forgione what purported to be an "Independent Contractor Agreement" and directed Forgione to sign and return the agreement.

190.    Forgione refused to sign the agreement because the contract terms differed from his actual working conditions and because Forgione was an employee of Defendants, not an independent contractor.

191.    Although Forgione did not sign and return the Independent Contractor Agreement, Forgione continued working for Defendants, with no change to the terms and conditions of his employment.

192.    On or about January 15, 2022, Kogan publicly announced that employee who did not sign and return the Independent Contractor Agreement would be terminated.

193.    Forgione refused to sign and return the Independent Contractor Agreement; however, he continued to work for Defendants with no change to the terms and conditions of his employment.

194.    Forgione continued to work for Defendants through February 10, 2022.

195. After February 10, 2022, Defendants refused to provide Forgione with assignments and removed him from the schedule.

196. By removing Forgione from the schedule and refusing to assign him routes, Defendants effectively terminated Forgione's employment.

197. Defendants effectively terminated Forgione's employment after and because he refused to sign the Independent Contractor Agreement.

198. Defendants effectively terminated Forgione's employment in retaliation for his opposition to Defendants' unlawful employment practices.

199. Specifically, Defendants effectively terminated Forgione's employment in retaliation for Forgione's opposition to Defendants' improper misclassification of him as an independent contractor.

200. During Forgione's employment with Defendants, Defendants classified Forgione (and all other Installers) as an independent contractor.

201. However, Forgione (and Defendants' other Installers) was misclassified by Defendants as an independent contractor and should have been classified as an employee.

202. Forgione was economically dependent upon Defendants and was not in business for himself:

    a. Defendants controlled the terms and conditions of Forgione's employment. For example, Defendants unilaterally determined Forgione's route assignment and work locations, work assignments, work schedule, rate of pay, method of pay and did not allow Angeles to work at his own convenience. Defendants further had the power to hire, fire and discipline Forgione and required Forgione to work according to the specific instructions of Defendants;

    b. Forgione did not require a high degree of skill and/or independent initiative to perform his work;

    c. Forgione was a long-term employee who was not free to engage in other employment; and,

d. Forgione's work as an Installer was an integral part of Defendants' business.

203. Throughout Forgione's employment with Defendants, the terms and conditions of his employment were controlled directly by Kogan and Zilber.

204. By way of example, Forgione was expected to work a full day no less than five days per week—Monday to Friday, according to a schedule and route set by Defendants.

205. Forgione's failure to work at least five days per week according to the schedule and route set by Defendants would have subjected him to discipline by Defendants.

206. Forgione was not permitted to take a day off—including a sick day—without approval from Kogan or Zilber.

207. On a few occasions during his employment with Defendants, Forgione requested from Defendants, and received, a day off from his regular schedule.

208. On one occasion when Forgione requested a day off from his regular schedule, Kogan granted Forgione's request but told him as a general deterrent from taking future days off, "[If] you don't show up, you don't work here."

209. Additionally, Zilber was in regular communication with Forgione during the workday.

210. On occasions when Forgione (or other Installers) was having difficulty performing an installation, Zilber provided training as to how to perform the installation and, on several occasions, Zilber did so by travelling to the job location and guiding Forgione through the installation.

211. If Forgione needed to purchase equipment or materials to complete an installation, Forgione was required to contact Zilber, inform him of the materials needed, and receive approval from Zilber to purchase the materials, for which Defendants would reimburse Forgione.

212. For the duration of his employment with Defendants, Forgione drove the company van and, for a significant period of his employment, he was required to wear a uniform with Defendants' logo and name.

213. Throughout his employment with Defendants, Defendants never provided Forgione with any meal breaks.

214. For the duration of his employment with Defendants, Defendants did not track Forgione's hours worked—including the precise time Forgione commenced work and concluded work—using a punch clock, log book, or other method of contemporaneous recording.

215. For the duration of his employment with Defendants, Defendants failed to pay Forgione the applicable minimum wage rate for all hours worked, in accordance with the FLSA, NJWHL, and NYLL.

216. For the duration of his employment with Defendants, Defendants misclassified Forgione as an independent contractor.

217. For the duration of his employment with Defendants, Forgione regularly worked more than 40 hours per week but was not paid overtime pay at one-and-one-half times the applicable rate by Defendants.

218. For the duration of his employment with Defendants, Forgione regularly worked more than 10 hours in a day but was not paid spread-of-hours pay.

219. During his employment with Defendants, Defendants took unlawful deductions from Forgione's pay.

220. During his employment with Defendants, Defendants failed to promptly pay Forgione all wages due.

221. Defendants failed to keep accurate records of wages earned or hours worked by Forgione.

222. For the duration of his employment with Defendants, Defendants did not provide Forgione with a wage notice setting forth his rate of pay and basis thereof, exempt status, overtime rate, method of compensation, regular payday, names of his employers (including fictitious names), addresses and phone numbers for her employers' main offices or principal locations, or any allowances taken.

223. For the duration of his employment Defendants, Defendants failed to furnish Forgione with an accurate and complete statement with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

224. Defendants terminated Forgione's employment after and because he opposed of Defendants' unlawful pay practices.

225. Defendants knowingly and willfully violated the FLSA, NJWHL, NJWPL, and NYLL with respect to Forgione's employment.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Minimum Wage**
**(On Behalf of Plaintiffs and the FLSA Collective)**
**(Against all Defendants)**

226. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

227. Defendants are employers within the meaning of 29 U.S.C §§ 203(e) and 206(a) and employed Plaintiffs and the FLSA Collective.

228. Defendants were required to pay Plaintiffs and the FLSA Collective the applicable minimum wage rate.

229. Because Plaintiffs and the FLSA Collective were entitled to state minimum wage rates in excess of the federal minimum wage rate, Plaintiffs and the FLSA Collective are entitled to the applicable state minimum wage rate under the FLSA. 29 U.S.C. § 218(a).

230. Defendants failed to pay Plaintiffs and the FLSA Collective the minimum wages to which they are entitled under the FLSA.

231. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

232. Defendants' violations of the FLSA described above have been willful and therefore, a three-year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

233. As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover from Defendants their unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**New Jersey Wage and Hour Law – Unpaid Minimum Wage**
**(On Behalf of Plaintiffs and the Rule 23 NJWHL Class)**
**(Against all Defendants)**

234. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

235.     Defendants are employers of Plaintiffs and the Rule 23 NJWHL Class, and Plaintiffs and the Rule 23 NJWHL Class are employees of Defendants within the meaning of N.J.S.A. §34:11-56a, *et seq.*, and the supporting New Jersey Department of Labor and Workforce Development Regulations.

236.     Defendants have failed to pay the Plaintiffs and the Rule 23 NJWHL Class the minimum hourly wage to which they are entitled under the NJWHL and the supporting New Jersey Department of Labor and Workforce Development Regulations.

237.     By Defendants' knowing and/or intentional failure to pay Plaintiffs and the Rule 23 NJWHL Class the minimum hourly wage, they have willfully violated N.J.S.A. § 34:11-56a, *et seq.*, and the supporting New Jersey Department of Labor and Workforce Development Regulations.

238.     As a result of Defendants' willful violations of the NJWHL, Plaintiffs and the Rule 23 NJWHL Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Unpaid Minimum Wage**
**(On Behalf of Plaintiffs and the Rule 23 NYLL Class)**
**(Against all Defendants)**

239.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

240.     Defendants failed to pay Plaintiffs and the Rule 23 NYLL Class the minimum wages to which they are entitled under the NYLL.

241.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 NYLL Class minimum hourly wages.

242.    As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Rule

23 NYLL Class are entitled to recover from Defendants their unpaid minimum wages, liquidated

damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and

disbursements of this action pursuant to NYLL §§ 663(1), *et seq*.

**FOURTH CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Overtime**
**(On Behalf of Plaintiffs and the FLSA Collective)**
**(Against all Defendants)**

243.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

244.    Defendants are employers within the meaning of 29 U.S.C §§ 203(e) and 206(a)

and employed Plaintiffs and the FLSA Collective.

245.    Defendants were required to pay Plaintiffs and the FLSA Collective one and one-

half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours worked in

excess of 40 hours in a workweek.

246.    Defendants failed to pay Plaintiffs and the FLSA Collective the overtime wages to

which they were entitled under the FLSA.

247.    Defendants willfully violated the FLSA by knowingly and intentionally failing to

pay Plaintiffs and the FLSA Collective overtime wages.

248.    Defendants' violations of the FLSA described above have been willful, and

therefore, a three-year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C.

§ 255(a).

249.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA

Collective are entitled to recover from Defendants their unpaid overtime wages, liquidated

damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and

disbursements of this action pursuant to 29 U.S.C. § 216(b).

## FIFTH CAUSE OF ACTION
### New Jersey Wage and Hour Law – Unpaid Overtime
### (On Behalf of Plaintiffs and the Rule 23 NJWHL Class)
### (Against all Defendants)

250. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

251. The overtime wage provisions of N.J.S.A. § 34: 11-56a, *et seq.*, and the supporting New Jersey Department of Labor and Workforce Development Regulations apply to Defendants and protect Plaintiffs and the Rule 23 NJWHL Class.

252. Pursuant to N.J.S.A. § 34:11-56a, *et seq.*, and the supporting New Jersey Department of Labor and Workforce Development Regulations, Defendants were required to pay Plaintiffs and the Rule 23 NJWHL Class one and one-half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours worked in excess of 40 hours in a workweek.

253. Defendants have failed to pay Plaintiffs and the Rule 23 NJWHL Class the overtime wages to which they are entitled under N.J.S.A. § 34:11-56a, *et seq*.

254. By Defendants' knowing and/or intentional failure to pay Plaintiffs and the Rule 23 NJWHL Class the overtime wages to which they are entitled, Defendants have willfully violated N.J.S.A. § 34:11-56a, *et seq*., and the supporting New Jersey Department of Labor and Workforce Development Regulations.

255. As a result of Defendants' willful violations of the NJWHL, Plaintiffs and the Rule 23 NJWHL Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action.

## SIXTH CAUSE OF ACTION
### New York Labor Law – Unpaid Overtime
### (On Behalf of Plaintiffs and the Rule 23 NYLL Class)
### (Against all Defendants)

256.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

257.     Under the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiffs and other non-exempt employees one and one half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours they worked in excess of forty (40) hours per week.

258.     Defendants failed to pay Plaintiffs and the Rule 23 NYLL Class the overtime wages to which they were entitled under the NYLL.

259.     Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 NYLL Class overtime wages.

260.     As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 NYLL Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq.*

## SEVENTH CAUSE OF ACTION
### Fair Labor Standards Act – Failure to Promptly Pay Wages
### (On Behalf of Plaintiffs and the FLSA Collective)
### (Against all Defendants)

261.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

262.     29 U.S.C. § 206(a) imposes a requirement that employers promptly pay all wages to employees when they become due and owing.

263.      Defendants regularly failed to pay Plaintiffs and the FLSA Collective in full on the regular pay day set by Defendants and unreasonably delayed the payment of their wages.

264.     Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective promptly and in full.

265. Defendants' violations of the FLSA described above have been willful, and therefore, a three-year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

266. As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover from Defendants liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

**EIGHTH CAUSE OF ACTION**
**New Jersey Wage Payment Law – Failure to Promptly Pay Wages**
**(On Behalf of Plaintiffs and the Rule 23 NJWPL Class)**
**(Against all Defendants)**

267. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

268. N.J.S.A. 34:11-4.2 requires that, "every employer shall pay the full amount of wages due to their employees at least twice during each calendar month, on regular pay days designated in advance by the employer…"

269. Defendants regularly failed to pay Plaintiffs and the Rule 23 NJWPL Class in full on the regular pay day set by Defendants and unreasonably delayed the payment of their wages.

270. By Defendants' knowing and/or intentional failure to pay Plaintiffs and the Rule 23 NJWPL Class promptly and in full on their regular pay day, Defendants have willfully violated N.J.S.A. § 34:11-4.1, *et seq.*, and the supporting New Jersey Department of Labor and Workforce Development Regulations.

271. As a result of Defendants' willful violations of the NJWPL, Plaintiffs and the Rule 23 NJWPL Class are entitled to recover from Defendants liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action.

**NINTH CAUSE OF ACTION**

**New York Labor Law – Failure to Promptly Pay Wages**
**(On Behalf of Plaintiffs and the Rule 23 NYLL Class)**
**(Against all Defendants)**

272.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

273.    NYLL § 191(a) states, "A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned…"

274.    Plaintiffs and the Rule 23 NYLL Class are manual workers as defined by NYLL § 190(4) as they spend more than 25% of their working time engaged in physical labor.

275.    As such, Defendants were required to pay the wages of Plaintiffs and the Rule 23 NYLL Class weekly, and not later than seven calendar days after the end of the week in which the wages were earned.

276.    Defendants failed to pay Plaintiffs and the Rule 23 NYLL Class promptly and in full the wages they were owed, in violation of the NYLL.

277.    Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 NYLL Class promptly.

278.    As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 NYLL Class are entitled to recover from Defendants liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action.

**TENTH CAUSE OF ACTION**
**Fair Labor Standards Act – Record Keeping Violations**
**(On Behalf of Plaintiffs and the FLSA Collective)**
**(Against all Defendants)**

279.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

280.    Pursuant to the FLSA, employers are required to keep and maintain employee payroll records reflecting, *inter alia*, the hours worked and pay received by each employee, for at

least three years, and records on which employee wage computations are based for at least two years.

281.     Defendants failed to maintain complete and accurate records of, *inter alia*, the hours worked by Plaintiffs and the FLSA Collective.

282.     As such, Defendants are in violation of the FLSA record keeping requirements with respect to the employment of Plaintiffs and the FLSA Collective.

## ELEVENTH CAUSE OF ACTION
### New Jersey Wage and Hour Law and New Jersey Wage Payment Law – Record Keeping Violations
### (On Behalf of Plaintiffs and the Rule 23 NJWHL/NJWPL Class)
### (Against all Defendants)

283.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

284.     Pursuant to the NJWHL and NJWPL, employers are required to keep and maintain employee payroll records reflecting, *inter alia*, the hours worked and pay received by each employee, for at least six years.

285.     Defendants failed to maintain complete and accurate records of, *inter alia*, the hours worked by Plaintiffs and the Rule 23 NJWHL/NJWPL Class.

286.     As such, Defendants are in violation of the NJWHL and NJWPL record keeping requirements with respect to the employment of Plaintiffs and the Rule 23 NJWHL/NJWPL Class.

## TWELFTH CAUSE OF ACTION
### New York Labor Law – Recording Keeping Violations
### (On Behalf of Plaintiffs and the Rule 23 NYLL Class)
### (Against all Defendants)

287.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

288.     At all times relevant to this action, Defendants were and are required to establish, maintain, and preserve for not less than six years, weekly payroll records that show for each employee, among other information, true and accurate payroll records and the number of hours

worked daily and weekly, including the time of arrival and departure of each employee. NYLL § 195(4); 12 N.Y.C.R.R. § 142-2.6.

289.    Defendants violated the applicable NYLL and NYCRR provisions by not maintaining and preserving payroll records and the time of arrival and departure of Plaintiffs and the Rule 23 NYLL Class.

**THIRTEENTH CAUSE OF ACTION**
**New Jersey Wage Payment Law – Unlawful Deductions**
**(On Behalf of Plaintiffs and the Rule 23 NJWPL Class)**
**(Against all Defendants)**

290.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

291.    N.J.S.A. § 34:11-4.4 prohibits employers from withholding or diverting any portion of an employee's wages unless the amounts withheld or diverted fall under one of several specified categories.

292.    Defendants violated the NJWPL by withholding from the pay of Plaintiffs and the Rule 23 NJWPL Class amounts for parking ticket fines, insurance deductibles on the company van, customer claims of damaged property, and other categories of deductions not permitted by the NJWPL.

293.    By Defendants' knowing and/or intentional taking of unlawful deductions from the pay of Plaintiffs and the Rule 23 NJWPL Class, Defendants have willfully violated N.J.S.A. § 34:11-4.1, *et seq.*, and the supporting New Jersey Department of Labor and Workforce Development Regulations.

294.    As a result of Defendants' willful violations of the NJWPL, Plaintiffs and the Rule 23 NJWPL Class are entitled to recover from Defendants unpaid wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action.

## FOURTEENTH CAUSE OF ACTION
### New York Labor Law – Unlawful Deductions
### (On Behalf of Plaintiffs and the Rule 23 NYLL Class)
### (Against all Defendants)

295.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

296.     NYLL § 193(1) prohibits employers from deducting the wages of an employee unless such deductions, "a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency;  or b) are expressly authorized in writing by the employee and are for the benefit of the employee…"

297.     Defendants violated the NYLL by withholding from the pay of Plaintiffs and the Rule 23 NYLL Class amounts for parking ticket fines, insurance deductibles on the company van, customer claims of damaged property, and other categories of deductions not authorized by law or in writing by Defendants' employees and for their benefit.

298.     Defendants willfully violated the NYLL by knowingly and intentionally taking impermissible deductions from the wages of Plaintiffs and the Rule 23 NYLL Class.

299.     As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 NYLL Class are entitled to recover from Defendants unpaid wages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action.

## FIFTEENTH CAUSE OF ACTION
### New York Labor Law – Unpaid Spread-of-Hours
### (On Behalf of Plaintiffs and the Rule 23 NYLL Class)
### (Against all Defendants)

300.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

301.     Defendants have willfully failed to pay Plaintiffs and the Rule 23 NYLL Class additional compensation of one hour's pay at the minimum hourly wage rate in all instances where Plaintiffs and the Rule 23 NYLL Class worked either a split shift or more than 10 hours per day,

in violation of NYLL §§ 650, *et seq.* and the regulations promulgated thereunder including N.Y.

Comp. Code R. & Regs. Tit. 12 §§, 137-1.7 (2010), 146-1.6 (2012).

302.    Defendants violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 NYLL Class spread-of-hours pay.

303.    As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 NYLL Class are entitled to recover from Defendants unpaid spread-of-hours compensation, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to the NYLL.

**SIXTEENTH CAUSE OF ACTION**
**New York Labor Law – Wage Theft Prevention Act Notice Violations**
**(On Behalf of Plaintiffs and the Rule 23 NYLL Class)**
**(Against all Defendants)**

304.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

305.    NYLL § 195(1)(a) obligates every employer to: "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article;  the name of the employer;  any "doing business as" names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer;  plus such other information as the commissioner deems material and necessary.  Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and

dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years."

306. Defendants failed to provide Plaintiffs and the Rule 23 NYLL Class with wage notices compliant with NYLL § 195(1)(a).

307. Due to Defendants' violations of NYLL § 195(1), Plaintiffs and the Rule 23 NYLL Class are each entitled to recover from Defendants statutory penalties of $50.00 for each workday that Defendants failed to provide wage notices, up to a maximum of $5,000 each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided by NYLL § 198(1-b).

308. Defendants violated NYLL § 195(3) by failing to furnish Plaintiffs and the Rule 23 NYLL Class, with each payment of wages, an accurate statement listing the dates of work covered by that payment or wages; name of employee; name of employer; address and phone number of employer; rate of rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages, deductions, allowances, if any, claimed as part of the minimum wage; and net wages.

309. Through their failure to provide Plaintiffs and the Rule 23 NYLL Class with wage statements as required by the NYLL, Defendants have violated NYLL § 190, *et seq*., and the supporting New York State Department of Labor Regulations.

310. Due to Defendants' violations of NYLL § 195(3), Plaintiffs and the Rule 23 NYLL Class are each entitled to recover from Defendants statutory penalties of $250.00 for each workweek that Defendants failed to provide them with accurate wage statements, or a total of $5,000 each, plus reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL § 198(1-d).

## SEVENTEENTH CAUSE OF ACTION
### Fair Labor Standards Act – Retaliation
### (On Behalf of Plaintiffs)
### (Against all Defendants)

311.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

312.    Plaintiffs were employees of Defendants within the meaning of the FLSA.

313.    Defendants were employers of Plaintiffs within the meaning of the FLSA.

314.    29 U.S.C. § 215(a)(3) prohibits any person, "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

315.    While employed by Defendants, Angeles complained to Defendants about their unlawful employment practices, including their unlawful deduction of his wages and failure to pay him promptly and in full when his wages were due.

316.    While employed by Defendants, Forgione complained to Defendants about their unlawful employment practices, including their unlawful misclassification of Forgione as an independent contractor.

317.    Plaintiffs' complaints constitute protected activity under the FLSA.

318.    After and as a result of Angeles's complaints, Defendants terminated Angeles's employment.

319.    After and as a result of Forgione's complaints, Defendants removed Forgione from the schedule, effectively terminating his employment.

320.    A causal connection exists between Angeles's complaints of Defendants' unlawful pay practices—including their unlawful deduction of his wages and failure to pay him promptly and in full when his wages were due—and Defendants' termination of Angeles's employment.

321.    A causal connection exists between Forgione's complaints of Defendants' unlawful pay practices—including their misclassification of Forgione as an independent contractor—and Defendants' effective termination of Forgione's employment

322.    Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiffs' employment in retaliation for Plaintiffs' complaints of Defendants' unlawful pay practices.

323.    Due to Defendants' violations of 29 U.S.C. § 215(a)(3), Plaintiffs are entitled to recover from Defendants their lost wages and other compensatory damages, liquidated damages in an amount equal to their lost wages, pre-judgment and post-judgment interest, along with reasonable attorneys' fees, costs and injunctive and declaratory relief.

**EIGHTEENTH CAUSE OF ACTION**
**New Jersey Wage and Hour Law and New Jersey Wage Payment Law – Retaliation**
**(On Behalf of Plaintiffs)**
**(Against all Defendants)**

324.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

325.    The NJWHL and NJWPL prohibit retaliation by employers against employees who complain of or oppose employers' unlawful pay practices.

326.     Plaintiffs were employees of Defendants within the meaning of the NJWHL and NJWPL.

327.    Defendants were employers of Plaintiffs within the meaning of the NJWHL and NJWPL.

328.    While employed by Defendants, Angeles complained to Defendants about their unlawful employment practices, including their unlawful deduction of his wages and failure to pay him promptly and in full when his wages were due.

329. While employed by Defendants, Forgione complained to Defendants about their unlawful employment practices, including their unlawful misclassification of Forgione as an independent contractor.

330. Plaintiffs' complaints constitute protected activity under the NJWHL and NJWPL.

331. Within 90 days of Angeles's complaints to Defendants, Defendants terminated Angeles's employment.

332. Within 90 days of Forgione's complaints to Defendants, Defendants removed Forgione from the schedule, effectively terminating his employment.

333. A causal connection exists between Plaintiffs' complaints of Defendants' unlawful conduct and Defendants' termination of Plaintiffs' employment.

334. Because Defendants took adverse employment actions against Plaintiffs within 90 days of their complaints of Defendants' NJWHL and NJWPL violations, Plaintiffs are entitled to a presumption that Defendants' adverse employment actions were taken against Plaintiffs in retaliation for their complaints.

335. Defendants retaliated against Plaintiffs after and because of their complaints of Defendants NJWHL and NJWPL violations by terminating their employment.

336. Due to Defendants' violations of the anti-retaliation provisions of the NJWHL and NJWPL, Plaintiffs are entitled to recover from Defendants lost wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action.

### NINETEENTH CAUSE OF ACTION
**New York Labor Law – Retaliation**
**(On Behalf of Plaintiffs)**
**(Against all Defendants)**

337. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

338. Plaintiffs were employees of Defendants within the meaning of the NYLL.

339. Defendants were employers of Plaintiffs within the meaning of the NYLL.

340. NYLL § 215(1) states, in part, "No employer or his or her agent, or the officer of agent of any corporation, partnership, or limited liability company…shall discharge, threaten, penalize or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…or his or her authorized representative…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter…[or] (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter…or (v) because such employee has otherwise exercised rights protected under this chapter…"

341. While employed by Defendants, Angeles complained to Defendants about Defendants' unlawful practices, policies and procedures of not being paid proper wages, including their unlawful deduction of his wages and failure to pay him promptly and in full when his wages were due.

342. While employed by Defendants, Forgione complained to Defendants about Defendants' unlawful practices, policies and procedures of not being paid proper wages, including their unlawful misclassification of Forgione as an independent contractor.

343. Plaintiffs' complaints to Defendants constitute protected activity under NYLL § 215.

344. A causal connection exists between Plaintiffs' complaints of Defendants' improper pay practices and Defendants' decision to terminate Plaintiffs' employment.

345. Defendants violated NYLL § 215 by retaliatorily terminating Angeles's employment due to his complaints about Defendants' unlawful pay practices, policies and

procedures, including their unlawful deduction of his wages and failure to pay him promptly and in full when his wages were due.

346.    Defendants violated NYLL § 215 by retaliatorily terminating Forgione's employment due to his complaints about Defendants' unlawful pay practices, policies and procedures, including their unlawful misclassification of Forgione as an independent contractor.

347.    Due to Defendants' violations of NYLL § 215(1), Plaintiffs are entitled to recover from Defendants their lost wages and other compensatory damages, liquidated damages, pre-judgment and post-judgment interest, along with reasonable attorneys' fees, costs and injunctive and declaratory relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the FLSA Collective, the Rule 23 NJWHL/NJWPL Class, and the Rule 23 NYLL Class respectfully request that this Court grant the following relief:

A. Designating this action as a collective action on behalf of the FLSA Collective and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated non-exempt employees and appointing Plaintiffs and their counsel to represent the FLSA Collective.  Such notice shall inform them that this civil action has been filed, the nature of the action, and their right to join this lawsuit if they believe they were denied proper wages;

B. Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Rule 23 NJWHL/NJWPL Class and appointing Plaintiffs and their counsel to represent the class;

C. Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Rule 23 NYLL Class and appointing Plaintiffs and their counsel to represent the class;

D. Issuing an order tolling the statute of limitations;

E. Issuing a declaratory judgment that the practices complained of herein are unlawful under applicable state and federal law;

F. Declaring that Defendants violated the minimum wage provisions of the FLSA, NJWHL and supporting New Jersey Department of Labor and Workforce Regulations, and NYLL and supporting New York State Department of Labor Regulations;

G. Declaring that Defendants violated the overtime provisions of the FLSA, NJWHL and supporting New Jersey Department of Labor and Workforce Regulations, and NYLL and supporting New York State Department of Labor Regulations;

H. Declaring that Defendants violated the prompt payment provisions of the FLSA, NJWPL and supporting New Jersey Department of Labor and Workforce Regulations, and NYLL and supporting New York State Department of Labor Regulations;

I. Declaring that Defendants violated the record keeping provisions of the FLSA, NJWHL and supporting New Jersey Department of Labor and Workforce Regulations, and NYLL and supporting New York State Department of Labor Regulations;

J. Declaring that Defendants violated the unlawful deductions provisions of the NJWHL and supporting New Jersey Department of Labor and Workforce Regulations, and NYLL and supporting New York State Department of Labor Regulations;

K. Declaring that Defendants violated the spread-of-hours pay provisions of the NYLL and New York State Department of Labor Regulations;

L. Declaring that Defendants violated the notice provisions of the NYLL and Wage Theft Prevention Act;

M. Declaring that Defendants terminated Angeles's employment due to his complaints of, and opposition to, Defendants' unlawful pay practices, policies and procedures, including their unlawful deduction of his wages and failure to pay him promptly and in full when his wages were due, and awarding Angeles a recovery for damages sustained;

N. Declaring that Defendants effectively terminated Forgione's employment due to his complaints of, and opposition to, Defendants' unlawful pay practices, policies and procedures, including their misclassification of Forgione as an independent contractor, and awarding Forgione a recovery for damages sustained;

O. Enjoining future violations of the FLSA, NJWHL, NJWPL, and NYLL by Defendants;

P. Declaring that Defendants' violations of the FLSA, NJWHL, NJWPL, and NYLL were willful;

Q. Awarding Plaintiffs, the FLSA Collective, the Rule 23 NJWHL/NJWPL Class, and the Rule 23 NYLL Class unpaid minimum wages;

R. Awarding Plaintiffs, the FLSA Collective, the Rule 23 NJWHL/NJWPL Class, and the Rule 23 NYLL Class unpaid overtime wages;

S. Awarding Plaintiffs, the FLSA Collective, the Rule 23 NJWHL/NJWPL Class, and the Rule 23 NYLL Class compensation for the amounts unlawfully deducted from their pay;

T. Awarding Plaintiffs and the Rule 23 NYLL Class unpaid spread-of hours compensation;

U. Awarding Plaintiffs and the Rule 23 NYLL Class statutory penalties for Defendants' failure to furnish wage notices and/or pay statements pursuant to the NYLL;

V. Awarding Plaintiffs, the FLSA Collective, the Rule 23 NJWHL/NJWPL Class, and the Rule 23 NYLL Class liquidated and/or punitive damages in the maximum amount allowable by law for all unpaid, delayed, and unlawfully deducted wages found to be due, pursuant to the FLSA, NJWHL, NJWPL, and NYLL;

W. Awarding Plaintiffs compensatory damages, pursuant to the FLSA, NJWHL, NJWPL and/or NYLL, retroactive to the date of their termination, for all lost wages and benefits sustained as a result of Defendants' retaliatory conduct after and as a result of Plaintiffs' complaints of and/or opposition to Defendants' unlawful pay practices;

X. Awarding Plaintiffs liquidated and/or punitive damages pursuant to the FLSA, NJWHL, NJWPL and/or NYLL as a result of Defendants' retaliatory conduct after and as a result of Plaintiffs' complaints of and/or opposition to Defendants' unlawful pay practices;

Y. Awarding Plaintiffs, the FLSA Collective, the Rule 23 NJWHL/NJWPL Class, and the Rule 23 NYLL Class reasonable attorney's fees, costs, and expenses of the action under the FLSA, NJWHL, NJWPL, and NYLL;

Z. Awarding Plaintiffs, the FLSA Collective, the Rule 23 NJWHL/NJWPL Class, and the Rule 23 NYLL Class pre-judgment and post-judgment interest under the FLSA, NJWHL, NJWPL, and NYLL;

AA. Awarding such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demands a trial by jury.

Dated:  February 10, 2023
New York, New York

**AKIN LAW GROUP PLLC**

*/s/ Justin Ames*

_____

Justin Ames, Esq.
45 Broadway, Suite 1420
New York, NY 10006
Telephone: (212) 825-1400
Facsimile: (212) 825-1440
Email: justin@akinlaws.com
*Attorneys for Plaintiff*